AGREEMENT NO: BRIT 2002/208

# EXCESS OF LOSS REINSURANCE AGREEMENT

between

## BRITANNIA INTERNATIONAL LIFE & CASUALTY LIMITED
Belize City, Belize

(hereinafter called the "Reinsured")
of the one part

AND

## CONDOR INSURANCE LIMITED
Charlestown, Nevis, West Indies

(hereinafter called the "Reinsurer")
of the other part

EXHIBIT C

AGREEMENT NO: BRIT 2002/208

# INDEX

| | ARTICLE | PAGE |
|---|---|---|
| Business Reinsured | 1 | 1 |
| Commencement & Termination | 2 | 1 |
| Retention & Limit | 3 | 1 |
| Premium | 4 | 2 |
| Definitions | 5 | 2 |
| Net Retained Lines | 6 | 2 |
| Loss Notices and Claims Settlement and Co-operation | 7 | 3 |
| Salvage & Subrogation | 8 | 3 |
| Errors & Omissions | 9 | 4 |
| Access to Records | 10 | 4 |
| Offset | 11 | 4 |
| Arbitration | 12 | 4 |
| Insolvency | 13 | 5 |
| Several Liability | 14 | 6 |
| Extra Contractual Obligations | 15 | 6 |
| Excess of Original Policy Limits | 16 | 6 |
| Honourable Undertaking | 17 | 7 |
| Jurisdiction | 18 | 7 |
| Intermediary | 19 | 7 |

AGREEMENT NO: SRIT 2002/298

## ARTICLE 1
### BUSINESS REINSURED

In consideration of the premium being paid, the Reinsurer agrees to indemnify the Reinsured in accordance with the terms set forth herein for any claim or claims made under all policies issued or renewed with an effective date during the term of this Agreement to Members of the Preferred Healthcare Providers Risk Purchasing Group underwritten by Professional Risk Underwriters.

All reinsurance for which the Reinsurer will be obligated by virtue of this Agreement shall be subject to the same terms, conditions, interpretations, waivers, modifications and alterations as the respective policies of the Preferred Healthcare Providers Risk Purchasing Group programme to which this reinsurance applies.

## ARTICLE 2
### COMMENCEMENT & TERMINATION

This Agreement shall cover the Reinsured in respect of all claims made under original policies attaching during the twelve month period commencing at 12.01 a.m., 1st. October, 2002.

This Agreement may be cancelled by either party at any time by giving the other party 90 days prior written notice by registered mail. In the event of cancellation or termination of this Agreement, the Reinsurer will continue to cover all policies coming within the scope of this Agreement, including those written or renewed during the period of notice, until the natural expiration or next anniversary of such policies whichever first occurs.

Notwithstanding any other provisions of this Agreement to the contrary, this Agreement shall automatically terminate upon the happening of the following events:

- Insolvency of the Reinsured or Reinsurer which results in the intervention of insurance regulatory authorities; or

- Entry of an order of liquidation, rehabilitation, receivership or conservation with respect to the Reinsured or Reinsurer by any court or regulatory authority.

## ARTICLE 3
### RETENTION & LIMIT

The Reinsurer will indemnify the Reinsured for those loss amounts in excess of an ultimate net loss of US$200,000 each and every claim, any one original insured, up to a further amount of $1,800,000 each and every claim, any one original insured.

Loss adjustment expenses and defence costs shall be allocated pro-rata to the indemnity amounts paid by the Reinsurer and Reinsured hereunder in respect of each claim and shall be payable in addition to the limit and retention hereon.

Agreement No: BRIT 2002/208

## ARTICLE 4
### PREMIUM

The Reinsured will pay to the Reinsurer a monthly adjustment premium calculated at a rate of 17.5% of the net written premium income on original policies reinsured hereunder. The Reinsured shall also pay a deposit premium of US$25,000, at inception which will applied against the final instalment premium payable hereunder.

Premium bordereau and claims reports are to be provided to the Reinsurer by the Reinsured within 15 days of the end of each month. Reinsurance premiums due hereunder to be settled within 30 days of the end of each month.

Claim reports to be provided in respect of individual claims involving serious injury and claims reserved at US$100,000 or higher.

## ARTICLE 5
### DEFINITIONS

The term "Ultimate Net Loss" shall mean the sum actually paid by the Reinsured in settlement of losses after making deductions for all recoveries, all salvages and all claims upon other reinsurances whether collected or not, on policies written by the Reinsured and covered hereunder, and shall include Allocated Loss Adjustment Expenses (ALAE) arising from the settlement of claims other than the salaries of employees and the office expenses of the Reinsured.

ALAE shall mean all legal expenses and others (including interest occurring before and/or after entry of judgement) incurred by the Reinsured in connection with the investigation, adjustment, settlement or litigation of claims or losses.

Nothing in this Article shall be construed to mean that losses under this Agreement are not recoverable until the Reinsured's Ultimate Net Loss has been ascertained.

"Net Written Premium Income" as used herein shall mean the gross written premium income on policies attaching during the period of this Agreement and collected by the Reinsured during the accounting month less original acquisition costs & expenses and applicable premium taxes & administrative expenses but such deductions shall not exceed 29.5% of the gross written premium, or so deemed, cancellations and return premiums.
However in the event of a claim being made under an original policy reinsured hereunder any outstanding premium balance under such policy shall become due and payable within 5 days thereof.

## ARTICLE 6
### NET RETAINED LINES

This Agreement shall only protect the portion of any insurance which the Reinsured retains net for its own account. The Reinsurer's liability hereunder shall not be

AGREEMENT NO: BRIT 2002/208

increased due to the failure or inability of the Reinsured to collect from any other reinsurer any amounts which may have become due from them whether such failure or inability arises from the insolvency of such other reinsurer or otherwise.

## ARTICLE 7
## LOSS NOTICES AND CLAIMS SETTLEMENT AND CO-OPERATION

The Reinsured will advise the Reinsurer promptly of any loss covered hereunder which exceeds or appears likely to exceed, 50% of the attachment point hereon, and of all subsequent developments pertaining thereto. Inadvertent omission in dispatching the aforementioned notices will in no way affect the obligation of the Reinsurer under this Agreement, provided the Reinsured informs the Reinsurer of such omission promptly upon discovery.

The Reinsured will have the right to settle all claims under its policies. The settlements, provided that they are within the terms of this Agreement and including any ex-gratia payments that may be made by the Reinsured, will be unconditionally binding on the Reinsurer. The Reinsurer, however, at their own expense, will have an opportunity to be associated with the Reinsured in the defence of any claim, suit or proceeding involving this Agreement, and the Reinsurer will co-operate in every respect in such defence. Amounts due the Reinsured hereunder in the settlement of losses and loss expenses will be payable by the Reinsurer immediately upon reasonable evidence of the amount paid or to be paid being furnished by the Reinsured.

## ARTICLE 8
## SALVAGE AND SUBROGATION

The Reinsurer will be credited with their share of salvage and/or subrogation (i.e. reimbursement obtained or recovery made by the Reinsured less the actual cost, excluding internal office expenses, salaries, and other remuneration of regular employees, and sums paid to attorneys as retainers, incurred in obtaining such reimbursement or making such recovery) pertaining to the claims and settlements involving reinsurance hereunder. Unless the Reinsured and the Reinsurer agree to the contrary, the Reinsured will enforce its right to salvage and/or subrogation relating to any loss and will prosecute all claims arising out of such right.

Should the Reinsured refuse or neglect to enforce this right, the Reinsurer is hereby empowered and authorised to instigate appropriate action in the name of the Reinsured.

Salvage and/or subrogation will always be used to reimburse Reinsurers in the reverse order of their participation in said loss before being used in any way to reimburse the Reinsured for the loss within its retention. If salvage and/or subrogation is insufficient to cover the expense incurred in its recovery, the net expenses will be apportioned in proportion to the Reinsurers' respective interests in the loss.

AGREEMENT NO: BRIT 2002/208

## ARTICLE 9
### ERRORS AND OMISSIONS

Any inadvertent error, omission or delay in complying with the terms and conditions of this Agreement shall not be held to relieve either party hereto from any liability which would attach to it hereunder if such error, omission or delay had not been made, provided such error, omission or delay is rectified immediately upon discovery.

## ARTICLE 10
### ACCESS TO RECORDS

The Reinsurer or its duly appointed representatives shall have access to the books, records and papers of the Reinsured or their agents at all reasonable times, whether before or after termination of this Agreement, for the purpose of obtaining information concerning this Agreement or the subject matter thereof.

## ARTICLE 11
### OFFSET

The Reinsured and the Reinsurer may offset any balance or amount due from one party to the other under this Agreement or any other agreement heretofore or hereafter entered into between the Reinsured and the Reinsurer, whether acting as assuming reinsurer or ceding company. This provision shall not be affected by the insolvency of either party to this Agreement.

## ARTICLE 12
### ARBITRATION

As a condition precedent to any right hereunder, all matters of difference between the parties arising under, out of or in connection with this Agreement, including formation and validity, and whether arising during or after the period of this Agreement, shall be referred to an arbitration tribunal in the manner hereinafter set out.

Unless the parties appoint a sole arbitrator within 14 days of one receiving a written request from the other for arbitration, the dispute will be adjudicated by a tribunal of three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within 30 days after receipt of written notice from the other party requesting it to do so, the requesting party may appoint both arbitrators.

Before they enter upon a reference the two arbitrators shall appoint a third arbitrator. Should they fail to agree in the selection of the third arbitrator within 30 days of their appointment, each will nominate three individuals of whom the other will decline two. The final decision will be made by drawing lots. The three arbitrators shall decide by majority.

AGREEMENT NO: BRIT 2002/208

If no majority can be reached the verdict of the third arbitrator shall prevail. He shall also act as chairman of the tribunal.

All arbitrators shall be persons with not less than ten years' experience of insurance or reinsurance as persons engaged in the industry itself or as lawyers or other professional advisers, excluding representatives of the parties and their regular trade associates, and will not have any personal or financial interest in the results of the arbitration.

Each party will submit its case to the arbitrators within 30 days of the selection of the third arbitrator or within such longer period as may be agreed upon. The arbitration tribunal shall, so far as is permissible under law and practice of the place of arbitration, have power to fix all procedural rules for the holding of the arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of the documents, examination of witnesses and any other matter whatsoever relating to the conduct of the arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Within 60 days after all matters have been submitted, unless otherwise agreed by the arbitrators, the arbitrator tribunal shall render its decision in writing which will be final and binding for both parties. Judgement upon any award rendered may be entered in any court having jurisdiction.

Unless otherwise allocated by the arbitration tribunal, all costs of the arbitration proceeding, including the fees of the arbitrators, shall be borne equally among the parties.

The place of the arbitration may be chosen by the parties, but in default of such choice, the place of arbitration shall be in London.

## ARTICLE 13
### INSOLVENCY

In the event of the insolvency of the Reinsured, this reinsurance shall be payable directly to the Reinsured or its liquidators, receivers, conservators or statutory successors on the basis of the liability of the Reinsured without diminution because of the insolvency of the Reinsured. It is agreed however that the liquidator, receiver, conservator or statutory successor of the Reinsured shall give written notice to the Reinsurer of the pendency of a claim against the Reinsured on insurance ceded under this Agreement within a reasonable time after such claim is filed in the conservation or liquidation proceeding, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defence or defences which it may deem available to the Reinsured or its liquidators, receivers, conservators or statutory successors. The expenses thus incurred by the Reinsurer shall be chargeable, subject to regulatory approval, against the Reinsured as part of the expenses of conservation or liquidation to the extent of a proportionate share of the benefit which may accrue to the Reinsured solely as a result of the defence undertaken by the Reinsurer.

AGREEMENT NO: BRIT 2002/205

## ARTICLE 14
### SEVERAL LIABILITY

The subscribing Reinsurers' obligations under contracts of reinsurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing Reinsurers are not responsible for the subscription of any co-subscribing Reinsurer who for any reason does not satisfy all or part of its obligations.

## ARTICLE 15
### EXTRA CONTRACTUAL OBLIGATIONS

This Agreement shall protect the Reinsured within the limits hereof, where the ultimate net loss includes any Extra Contractual Obligations. The term "Extra Contractual Obligations" is defined as those liabilities not covered under any other provisions of this Agreement and which arise from the handling of any claim on business covered hereunder, such liabilities arising because of, but not limited to, the following: failure by the Reinsured to settle within the policy limit, or by reason of alleged or actual negligence, fraud, or bad faith in rejecting an offer of settlement or in the preparation of the defence or in the trial of any action against its insured or reinsured or in the preparation or prosecution of an appeal consequent upon such action.

The date on which any Extra Contractual Obligation is incurred by the Reinsured shall be deemed, in all circumstances, to be the date of the original claim.

However, this article shall not apply where the loss has been incurred due to fraud by a member of the Board of Directors or a corporate officer of the Reinsured acting individually or collectively or in collusion with any individual or corporation or any other organisation or party involved in the presentation, defence or settlement of any claim covered hereunder.

## ARTICLE 16
### EXCESS OF ORIGINAL POLICY LIMITS

This Agreement shall protect the Reinsured, within the limits hereof, in connection with the ultimate net loss in excess of the limit of its original policy, such loss in excess of the limit having been incurred because of the failure by it to settle within the policy limit or by reason of alleged or actual negligence, fraud, or bad faith in rejecting an offer of settlement or in the preparation of the defence or in the trial of any action against its insured or reinsured or in the preparation or prosecution of an appeal consequent upon such action.

AGREEMENT NO: BRIT 2002/208

However, this article shall not apply where the loss has been incurred due to fraud by a member of the Board of Directors or a corporate officer of the Reinsured acting individually or collectively or in collusion with any individual or corporation or any other organisation or party involved in the presentation, defence or settlement of any claim covered hereunder.

For the purpose of this article, the word "loss" shall mean any amounts for which the Reinsured would have been contractually liable to pay had it not been for the limit of the original policy.

## ARTICLE 17
### HONOURABLE UNDERTAKING

The purposes of this Agreement are not to be defeated by a narrow technical construction of its provisions: it will be considered an honourable undertaking and will be subject to liberal construction for the purpose of giving effect to the real intentions of the parties hereto. In the event of any misunderstanding or dispute arising between the parties in reference to any provisions of this Agreement, the amount of premium due, or the amount of loss, the matter in dispute will be referred to arbitration in the manner provided herein, and the parties hereto agree to abide by the result of such arbitration.

## ARTICLE 18
### JURISDICTION

It is understood and agreed that this Agreement shall be subject to the jurisdiction of the High Court of Justice in England which shall apply the law of England as the proper law of this Agreement.

## ARTICLE 19
### INTERMEDIARY

Alydon International Limited is hereby recognised as the Intermediary Consultant negotiating this Agreement. All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expenses, salvages and loss settlements) relating thereto shall be transmitted to the Reinsured or the Reinsurer through the Intermediary Consultant.

AGREEMENT NO: BRIT 2002/208

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed in duplicate by their duly authorised representatives.

Signed at Belize City, Belize   this 7 day of February, 2003

BRITANNIA INTERNATIONAL LIFE & CASUALTY LIMITED

_[signature]_

_[seal: BRITANNIA INTERNATIONAL LIFE & CASUALTY LIMITED BELIZE]_

Signed at   Charleston, NEVIS   this 27 day of January, 2003

CONDOR INTERNATIONAL LIMITED

_[signature]_

_[seal]_

Page 8 (12/02)

# ADDENDUM
Attaching to and forming part of Reinsurance Agreement No:
BRIT 2002/208

## BETWEEN
BRITANNIA INTERNATIONAL LIFE & CASUALTY LIMITED
AND
CONDOR INSURANCE LIMITED

It is hereby noted and agreed that effective inception the Reinsured herein is amended to the following:
> BRITANNIA INTERNATIONAL LIFE & CASUALTY LIMITED and/or
> PRO MED CASUALTY INSURANCE COMPANY LTD. and/or
> PRO MED REINSURANCE LTD.
> for their respective rights and interests.

It is further noted and agreed that this Agreement is extended to expire at 12:01 a.m. 1st January, 2004.

All other terms & conditions remain unchanged.

IN WITNESS WHEROF, the parties hereto have caused this addendum to be executed in duplicate by their duly authorised representatives.

Addendum
10th. October, 2003
Page 1

SIGNING PAGE TO ADDENDUM dated 10th, October, 2003

Signed at _____ this 23rd. day of December, 2003

**CONDOR INSURANCE LIMITED**

_[signature]_

Signed at _____ this _____ day of _____, 2003

**BRITANNIA INTERNATIONAL LIFE & CASUALTY LIMITED**

_____        _____

Signed at _____ this 6 day of Dec, 2003/4

**PRO MED CASUALTY INSURANCE COMPANY LTD.**

_[signature]_                  _____

Signed at _____ this 6 day of Dec, 2003/4

**PRO MED REINSURANCE LTD.**

_[signature]_                  _____

Addendum
10th, October, 2003
Page 2

# Condor Insurance Limited

(869) 469-1699 • Temple Building Suites 10-11, Main and Prince William Street • (869) 469-1767 (Fax)
Charlestown, Nevis • West Indies
www.CondorLtd.com

## ADDENDUM

Attaching to and forming part of Reinsurance Agreement No:
BRIT 2002/208

BETWEEN
BRITANNIA INTERNATIONAL LIFE & CASUALTY LIMITED and/or
PRO MED CASUALTY INSURANCE COMPANY LTD. and/or
PRO MED REINSURANCE LTD.
AND
CONDOR INSURANCE LIMITED

It is hereby noted and agreed that as respects new business and/or renewals written on or after 12:01a.m. ~~1st January, 2004~~ 1st September, 2003 the Reinsured hereunder is amended to the following:

PRO MED CASUALTY INSURANCE COMPANY LTD. and/or
PRO MED REINSURANCE LTD.
for their respective rights and interests

It is further noted and agreed that this agreement is extended to expire at 12:01 a.m. 1st. April, 2004.

All other terms and conditions remain unchanged.

IN WITNESS WHEREOF, the parties hereto have caused this addendum to be executed in duplicate by their duly authorised representatives.

Addendum
E&OE
19Dec03
Page 1

Office Of Harvey Milam, President
1145 Robinson Street, Ocean Springs, MS 39564
Telephone (228) 875-7758 • Fax (228) 875-7761 • Email: Harvey@CondorLtd.com

SIGNING PAGE TO ADDENDUM dated 19th. December, 2003

Signed at Ocean Springs, MS this 23rd day of Dec., 2003

CONDOR INSURANCE LIMITED

Signed at _____ this 6 day of Dec, 2003/4

PRO MED CASUALTY INSURANCE COMPANY LTD.

Signed at _____ this 6 day of Dec., 2003/4

PRO MED REINSURANCE LTD.

Addendum
E&OE
19Dec03
Page 2

# ADDENDUM

Attaching to and forming part of Reinsurance Agreement No:
BRIT 2002/208

BETWEEN
BRITANNIA INTERNATIONAL LIFE & CASUALTY LIMITED and/or
PRO MED CASUALTY INSURANCE COMPANY LTD. and/or
PRO MED REINSURANCE LTD.
AND
CONDOR INSURANCE LIMITED
for their respective rights and interests

It is hereby noted and agreed that effective inception (12:01a.m. 1st. October, 2002) Articles 7 & 12 hereof are amended as follows:

Article 7
Loss Notices and Claims Settlement and Co-Operation.

Amended to include the following paragraph:
"Notwithstanding the foregoing, the Reinsured may notify the Reinsurer of its intention to pay a claim and/or claim expense to its insured(s) on a certain date and the Reinsurer shall be required to make payment of its share of such claim and/or claim expense at the same time as the Reinsured, provided that the Reinsured's notice of its intention to make payment is in writing and given to the Reinsurer at least 5 business days prior to the date when the Reinsured intends to make the payment. Any claim and/or claim expense that is reported and paid in this manner shall be included on the next monthly account."

Article 12
Arbitration

Amended to include the following as the penultimate paragraph of this Article:
"Each party shall bear the expense of its own arbitrator and any associated legal expenses incurred on their part and, unless otherwise allocated by the arbitration tribunal, shall share equally with the other party the expenses of the third arbitrator and of the arbitration"

E&OE
Addendum - 1 Oct 04.
Page 1

All other terms and conditions remain unchanged.

IN WITNESS WHEREOF, the parties hereto have caused this addendum to be executed in duplicate by their duly authorised representatives.

Signed at _____ this _____ day of _____ , 2004

CONDOR INSURANCE LIMITED

_____

Signed at _____ this _____ day of _____ , 2004

BRITANNIA INTERNATIONAL LIFE & CASUALTY LTD.

_____        _____

Signed at _____ this   6   day of   Dec  , 2004

PRO MED. CASUALTY INSURANCE COMPANY LTD.

_____        _____

Signed at _____ this   6   day of   Dec  , 2004

PRO MED REINSURANCE LTD.

_____        _____

E&OE
Addendum – 1 Oct 04
Page 2