Reinsurance Agreement No: PMC 2003/201

# QUOTA SHARE REINSURANCE AGREEMENT

between

**Pro Med Casualty Insurance Company Limited and/or
Pro Med Reinsurance Limited**
Charleston, Nevis, West Indies
for their respective rights and interests

(hereinafter called the "Reinsured" of the one part)

And

**Condor Insurance Limited**
Charleston, Nevis, West Indies

(hereinafter called the "Reinsurer" of the other part)

EXHIBIT D

# Contents

|  | Section | Page |
|---|---|---|
| Business Reinsured | 1 | 3 |
| Commencement & Termination | 2 | 3 |
| Ceding Retention & Maximum Limit | 3 | 4 |
| Premium | 4 | 4 |
| Definitions | 5 | 5 |
| Net Risk | 6 | 6 |
| Notices and Settlements | 7 | 6 |
| Salvage and Subrogation | 8 | 7 |
| Errors and Omissions Clause | 9 | 8 |
| Access to Records | 10 | 8 |
| Offset Clause | 11 | 9 |
| Arbitration Clause | 12 | 9 |
| Insolvency Clause | 13 | 10 |
| Several Liability Clause | 14 | 11 |
| Extra Contractual Obligations | 15 | 11 |
| Excess of Original Policy Limits | 16 | 12 |
| Intermediary | 17 | 12 |
| Honorable Undertaking | 18 | 13 |
| Jurisdiction | 19 | 13 |

## SECTION ONE

**Business Reinsured**

The Reinsured shall cede to the Reinsurer and the Reinsurer agrees to accept from the Reinsured a 50% quota share cession of original policies covering medical professional liability and/or general liability issued or renewed with an effective date during the term of this reinsurance agreement, and underwritten on behalf of the Reinsured by Professional Risk Underwriters.

All reinsurance for which the Reinsurer will be obligated under this agreement will be subject to the same terms, conditions, waivers, modifications and amendments as the respective policies to which this reinsurance applies.

## SECTION TWO

**Commencement & Termination**

This agreement shall commence at 12:01 a.m., 1st. September, 2003 for an initial period of thirteen months and shall continue for such further period(s) as may be agreed between the parties hereto.

This agreement may be cancelled by either party hereto giving the other party ninety (90) days written notice by registered or certified mail. In the event of the termination of this agreement, all policies then in effect and those placed into effect during the termination period will be covered up to their respective expiration date (s).

This agreement will automatically terminate because of the following events:

The insolvency of either party, resulting in an insurance regulatory supervision or liquidation order, or either party is adjudged bankrupt by a court of competent jurisdiction.

Upon termination of this Agreement, the Reinsurer shall remain liable for their portion of any and all liabilities under Policies in force as of the date of termination of this Agreement until the expiration, termination or renewal date of each such policy, whichever comes first.

Notwithstanding the termination of this Agreement, the provisions of this Agreement shall continue to apply to all obligations and liabilities of the Reinsured and the Reinsurer incurred hereunder until such obligations and liabilities are fully performed and discharged.

## SECTION THREE

**Ceding Retention and Maximum Limit**

The Reinsurer will reinsure on a Quota Share basis fifty percent (50%) of the Quota Share limit as stated herein, subject to the terms and conditions of this agreement, up to a total maximum liability to the Reinsurer hereunder of $100,000 any one claim as defined in the original policies. However, if the original reinsured policy pays Loss Adjustment Expenses in addition to the limit, the Reinsurer will follow the original policy so reinsured and pay its proportion of such Loss Adjustment Expenses in addition to the reinsured limit.
In the event of a claim being paid that exceeds the quota share limit hereunder and where the original reinsured policy pays Loss Adjustment Expenses in addition to the limit, then the Reinsurer hereon shall pay its allocated pro-rata share of such Loss Adjustment Expenses in addition to the reinsured limit.

## SECTION FOUR

**Premium**

Page 4 of 14

The Reinsured agrees to pay and the Reinsurer agrees to accept, during the term of this agreement, 50% of the net written premium income on original policies reinsured hereunder.

Premium bordereau and claims reports are to be provided to the Reinsurer by the Reinsured within 15 days of the end of each month, and reinsurance premiums due hereunder less any claims paid by the Reinsured during that month to be settled within 30 days of the end of each month.

Any balance shown to be due the Reinsured shall be remitted by the Reinsurer within 15 days following the Reinsurer's receipt of the statement of premiums.

Claims reports to be provided in respect of individual claims involving serious injury and for any claims that are reserved at US$100,000 or higher.

## SECTION FIVE

### Definitions

"Net Written Premium Income" as used herein shall mean the gross written premium income on policies attaching during the period of this Agreement and collected by the Reinsured during the accounting month less original acquisition costs and expenses and applicable premium taxes and administrative expenses but such deductions shall not exceed 29.5% of the gross written premium, or so deemed, cancellations and return premiums, and the cost of any excess of loss reinsurance premium as may be determined from time to time.

"Quota Share Limit" shall not exceed $200,000 any one loss or occurrence as defined in the original policies reinsured hereunder. However, if the original reinsured policy pays Loss Adjustment Expenses in addition to the limit, the Reinsurer will follow the original policy so reinsured and pay its proportion of such Loss Adjustment Expenses in addition to the reinsured limit.

In the event of a claim being paid that exceeds the quota share limit hereunder and where the original reinsured policy pays Loss Adjustment

Expenses in addition to the limit, then the Reinsurer hereon shall pay its allocated pro-rata share of such Loss Adjustment Expenses in addition to the reinsured limit.

## SECTION SIX

**Net Risk**

The Reinsurer's liability hereunder shall not be increased due to the failure or inability of the Reinsured to collect from any other reinsurer any amounts which may have become due from them, whether such failure or inability arises from the insolvency of such other reinsurer or otherwise.

## SECTION SEVEN

**Notices and Settlements**

The Reinsured will advise the Reinsurer promptly of any loss covered hereunder which exceeds, or appears likely to exceed, 50% of the Quota Share Limit and of all subsequent developments pertaining thereto.
Inadvertent omission in dispatching the aforementioned notices will in no way affect the obligation of the Reinsurer if such omission is rectified promptly upon discovery.

The Reinsured will have the right to settle all claims under its policies. The settlements, provided that they are within the terms of this agreement and including any ex-gratia payments that may be made by the Reinsured, will be unconditionally binding on the Reinsurer who shall pay its quota share proportion thereof.

The Reinsurer, however, at their own expense, will have an opportunity to be associated with the Reinsured in the defense of any claim, suit or proceeding involving this Agreement, and the Reinsurer will co-operate in every respect in such defense.

The Reinsured shall establish a Claims Expense Replenishment Fund of $25,000 against which loss adjustment expenses and defense costs may

be drawn to settle such expenses paid in respect of claims covered hereunder, and which shall be replenished from time to time in the treaty account settlement as may be required to maintain the Fund balance of $25,000. The Reinsured will include the status of this Fund with its monthly accounting of premium and losses.

In the event of a claim being paid by the Reinsured exceeding $100,000, the Reinsurer at the request of the Reinsured shall reimburse the Reinsured within 15 days of proof of payment being received by the Reinsurer, for the Reinsurer's quota share portion of such loss.

Notwithstanding the foregoing, the Reinsured may notify the Reinsurer of its intention to pay a claim and/or claim expense to its insured(s) on a certain date and the Reinsurer shall be required to make payment of its share of such claim and/or claim expense at the same time as the Reinsured, provided that the Reinsured's notice of its intention to make payment is in writing and given to the Reinsurer at least 5 business days prior to the date when the Reinsured intends to make the payment. Any claim and/or claim expense that is reported and paid in this manner shall be included on the next monthly account.

## SECTION EIGHT

**Salvage and Subrogation**

The Reinsurer will be credited with their share of salvage and/or subrogation (i.e. reimbursement obtained or recovery made by the Reinsured less the actual cost, excluding internal office expenses, salaries, and other remuneration of regular employees, and sums paid to attorneys as retainers, incurred in obtaining such reimbursement or making such recovery) pertaining to the claims and settlements involving reinsurance hereunder. Unless the Reinsured and the Reinsurer agree to the contrary, the Reinsured will enforce its right to salvage and/or subrogation relating to any loss and will prosecute all claims arising out of such right.

Should the Reinsured refuse or neglect to enforce this right, the Reinsurer is hereby empowered and authorised to instigate appropriate action in the name of the Reinsured.

Salvage and/or subrogation will always be sued to reimburse Reinsurers in the reverse order of the participation in said loss before being used in any way to reimburse the Reinsured for the loss within its retention. If salvage and/or subrogation is insufficient to cover the expense incurred in its recovery, the net expenses will be apportioned in proportion to the Reinsurers' respective interests in the loss.

## SECTION NINE

### Errors and Omissions Clause

Any inadvertent error, omission or delay in complying with the terms and conditions of this agreement shall not be held to relieve either party hereto from any liability which would attach to it hereunder if such error, omission or delay had not been made, provided such error, omission or delay is rectified immediately upon discovery.

## SECTION TEN

### Access to Records

The Reinsurer or its duly appointed representatives shall have access to the books, records and papers of the Reinsured or their agents at all reasonable times, whether before or after termination of this Agreement, for the purpose of obtaining information concerning this Agreement or the subject matter thereof.

## SECTION ELEVEN

### Offset Clause

The Reinsured and the Reinsurer may offset any balance or amount due from one party to the other under this Agreement or any other agreement heretofore or hereafter entered into between the Reinsured and the Reinsurer, whether acting as assuming reinsurer or ceding company. This

provision shall not be affected by the insolvency of either party to this Agreement.

## SECTION TWELVE

**Arbitration Clause**

As a condition precedent to any right hereunder, all matters of difference between the parties arising under, or out of or in connection with this Agreement, including formation and validity, and whether arising during or after the period of this Agreement, shall be referred to an arbitration tribunal in the manner hereinafter set out.

Unless the parties appoint a sole arbitrator within 14 days of one receiving a written request from the other for arbitration, the dispute will be adjudicated by a tribunal of three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within 30 days after receipt of written notice from the other party requesting it to do so, the requesting party may appoint both arbitrators.

Before they meet upon a reference, the two arbitrators shall appoint a third arbitrator. Should they fail to agree in the selection of the third arbitrator within 30 days of their appointment, each will nominate three individuals of whom the other will decline two. The final decision will be made by drawing lots. The third arbitrator shall be the Chairman of the arbitration.

All arbitrators shall be persons with not less than ten years' experience in insurance or reinsurance as persons engaged in the industry itself or as lawyers or other professional advisors, excluding present or former representatives of the parties and their regular trade associates, and will not have any personal or financial interest in the results of the arbitration.

Each party will submit their case to the arbitrators within 30 days of the selection of the third arbitrator or such longer period as may be agreed upon. The arbitration tribunal shall, as far as is permissible under the law and practice of the place of arbitration, have the power to fix all procedural rules for the holding of the arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances

of the case with regard to pleadings, discovery, inspection of the documents, examination of witnesses and any other matter whatsoever relating to the conduct of the arbitration and may receive and act upon such evidence, whether oral or written, strictly admissible or not, as it shall in its discretion rule.

Within 60 days after all matters have been submitted, unless otherwise agreed by the arbitrators, the arbitration tribunal shall render its decision in writing and such decision will be binding upon both parties. Judgment upon any award rendered may be entered in any court of competent jurisdiction and not subject to appeal.

Each party shall bear the expense of its own arbitrator and any associated legal expenses incurred on their part and, unless otherwise allocated by the arbitration tribunal, shall share equally with the other party the expenses of the third arbitrator and of the arbitration.

The place of the arbitration will be set by the arbitration tribunal, but in default of such choice, the place of arbitration shall be in the Island of Nevis, West Indies.

## SECTION THIRTEEN

**Insolvency Clause**

In the event of the insolvency of the Reinsured, this reinsurance shall be payable directly to the Reinsured or its liquidators, receivers, conservators or statutory successors on the basis of the liability of the Reinsured without diminution because of the insolvency of the Reinsured. It is agreed however that the liquidator, receiver, conservator or statutory successor of the Reinsured shall give written notice to the Reinsurer of the pendency of a claim against the Reinsured on insurance ceded under this Agreement within a reasonable time after such claim is filed in the conservation or liquidation proceeding, and that during the pendence of such claim, the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Reinsured or its liquidators, receivers, conservators or statutory successors. The expenses thus